# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:89CR70151 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **SAMUEL JACOB WEBB**, | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

*Sharon Burnham, Assistant United States Attorney, Roanoke, Virginia, for United States; Joel C. Hoppe, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant, Samuel Jacob Webb, pleaded guilty to armed bank robbery in violation of 18 U.S.C.A. § 2113(d) (West 2000). He has filed objections to the probation officer's calculation of his sentencing range under the advisory sentencing guidelines. This opinion sets forth the court's rulings on those objections.

Webb's crime occurred on September 19, 1989, but he eluded apprehension until 2007. The parties agree that in determining the correct guideline calculation, the court must use the version of the guidelines in effect as of the date of the offense of conviction. *See* U.S. Sentencing Guidelines Manual ("USSG") § 1B1.11(b)(1) (2007). Accordingly, the references to the guidelines hereafter will be to the 1988 version.

In his objections, the defendant contends that (1) the firearm he displayed during the bank robbery was not "otherwise used;" (2) he did not obstruct justice; and (3) he is entitled to credit for acceptance of responsibility.

I

In addition to the PSR, the parties presented evidence at the sentencing hearing, including the testimony of employees of the bank that Webb robbed. Based on that evidence, including the information contained in the PSR, I find the following relevant facts.

On the day in question, Webb entered the bank wearing a mask and carrying a small semi-automatic pistol in his right hand. Once inside, he raised his arm, cocked the gun by activating the slide on the top of the pistol, and with his finger on the trigger, pointed the weapon in the direction of the tellers, and announced that it was a robbery. He then advanced to the teller line, approximately twelve feet away, where two tellers were standing counting money. He handed them a bag and told them to fill it with cash. He again pointed the pistol at the tellers with his finger on the trigger, and followed them with it as they filled the bag. At one point he told them to hurry up, and banged his left hand on the counter.

The tellers gave Webb cash in the amount of $18,320, which included packets of "bait" money from which the serial numbers had been recorded and maintained by the bank, along with three exploding dye packs. The tellers also activated the bank's security cameras, which took pictures of Webb.

The dye packs exploded as the defendant was making his escape, covering him with red dye, and because of this he was identified by various witnesses. He was successful in eluding authorities, however.

At some point thereafter, Webb obtained the wallet, driver's license, and Social Security number of an acquaintance, David Wilson Parker, and assumed Parker's identity. In 2007, Webb was convicted of a drug offense in Hendersonville, Tennessee, under Parker's name. Police there then learned of the real David Wilson Parker and during questioning of Webb, he finally admitted his true identity and spontaneously confessed to the 1989 bank robbery.

II

USE OF THE FIREARM.

The defendant objects to the application of USSG § 2B3.1(b)(2)(B), providing for a four-level increase if a firearm was "otherwise used" in the offense. The

- 3 -

defendant contends that instead the three-level increase applicable to offenses where the weapon is "brandished" should be applied.

In the 1988 version of the Sentencing Guidelines, brandished "means that the weapon was pointed or waived about, or displayed in a threatening manner." USSG § 1B1.1 cmt. n.1(c). In 2000, the Sentencing Commission amended this definition to provide that "brandished"

> means that all or part of the weapon was displayed or the presence of the weapon was made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly viable, the weapon must be present.

USSG app. C, amend. 602 (2000). By deleting the portion of the definition relating to pointing or waving about a weapon, the Commission made more factual situations subject to the greater "otherwise used" enhancement. *See* Thomas W. Hutchison et al., *Federal Sentencing Law and Practice* 33 (2008). Accordingly, it is necessary to examine case authority construing the brandishment definition prior to the 2000 amendment.

The relevant cases vary by circuit, showing different interpretations of "otherwise used." *See id.* The Fourth Circuit did not have a opportunity to adopt a

- 4 -

particular interpretation,[1] and other circuits range from finding the pointing of a gun along with an explicit threat to kill <u>not</u> to be within the definition of "otherwise used," *United States v. Matthews*, 20 F.3d 538, 553-54 (2d Cir. 1994), to holding that the pointing of a weapon at a person during a robbery with a threat or order does qualify, *United States v. LaFortune*, 192 F.3d 157, 161-62 (1st Cir. 1999).

I find that the more reasonable interpretation focuses on the specificity of the use of the weapon. Thus, as noted by the court in *LaForture*, it was the "specific rather than the general pointing of the gun that elevated its use from mere 'brandishment' to 'otherwise used.'" *Id.* at 161.

In the present case, the evidence shows that Webb cocked the gun, pointed it at the tellers, with his finger on the trigger, and ordered them to fill a bag with money. This is sufficient to prove that Webb "otherwise used" the weapon with the meaning of the guidelines. Accordingly, I will deny the defendant's objection.

---

[1] The Fourth Circuit did hold, in unpublished opinions without precedential authority, that pointing a gun at a bank teller, coupled with a explicit threat or order, did constitute "otherwise used" rather than brandishment. *See United States v. Tilley*, No. 97-4980, 1998 WL 654441, at 1 (4th Cir. Sept. 21, 1998) (unpublished); *United States v. Best*, No. 94-5080, 1995 WL 361167, at 1 (4th Cir. June 16, 1995) (unpublished).

- 5 -

OBSTRUCTION OF JUSTICE.

The question is whether the court should enhance the defendant's sentence by two levels for obstruction of justice. The guidelines provide for such an enhancement when the defendant "willfully impeded or obstructed, or attempted to impede or obstruct justice during the investigation or prosecution of the instant offense." USSG § 3C1.1.

Even before the 1990 amendment to the commentary to § 3C1.1, courts had held that, without more, mere flight from the authorities prior to arrest is not obstruction. *See, e.g., United States v. Stroud*, 893 F.2d 504, 505 (2d Cir. 1990). It has also been held that flight of the defendant accompanied by the use of alias did not constitute obstruction, where the use of an alias did not prevent his apprehension. *See United States v. Bliss*, 430 F.3d 640, 647-50 (2d Cir. 2005); *United States v. Stites*, 56 F.3d 1020, 1026 (9th Cir. 1995).

It is clear that in construing 3C1.1, "The distinction between merely 'avoiding or fleeing from arrest' and obstructing justice is somewhat imprecise and courts have generally relied on the facts of the particular case to determine when the enhancement is justified." *United States v. Walcott*, 61 F.3d 635, 639 (8th Cir. 1995).

Several factors make the enhancement appropriate in this case. The first is that Webb did not merely use an alias to avoid apprehension, but took the identity of

another person through the misappropriation of identity documents. This use of another's identity raises the level of avoidance beyond simply disappearing to avoid arrest. It shows a higher degree of willfulness, which is necessary to show obstruction.

While the government did not offer direct proof that the use of the false identity prevented Webb's capture, it can be reasonably inferred that it materially obstructed authorities in finding him. He was a suspect before he disappeared and was living in the same state, Tennessee, as before. The use of a real person's identity allowed Webb to live a normal life without detection and the failure of law enforcement to find him can "fairly be attributed to [his] cunning." *Bliss*, 430 F.3d at 649.

This objection by the defendant will be denied.[2]

ACCEPTANCE OF RESPONSIBILITY.

Normally an obstruction enhancement means that a defendant is not entitled to a reduction for acceptance of responsibility. *See* USSG § 3E1.1 cmt. n.4. In addition, Webb denied during his guilty plea colloquy that he pointed his gun at any of the

---

[2] The defendant also objects on the ground that the government did not timely object to the PSR's initial failure to apply an obstruction enhancement. However, the defendant has had a full opportunity to respond to the amended PSR containing the enhancement and I will exercise my discretion to allow an out-of-time objection. Fed. R. Crim. P. 32(i)(1)(D)

- 7 -

bank tellers at the time of the robbery, although he admits that he brandished the firearm. *See* USSG § 3E1.1 cmt. n.1(c) (noting that consideration should be given to "voluntary and truthful admission to authorities of involvement in the offense and related conduct").

However, in reviewing all of the circumstances of this case, I find that the defendant should be given credit for such acceptance. He has fully admitted all of his other conduct involved. Particularly in light of his spontaneous confession to the police in 2007 that he had committed this robbery in 1989, I find it would be unjust to deny him a two-level reduction for acceptance of responsibility.

III

For the foregoing reasons, and for the reasons stated on the record or given by the probation officer in his addendum to the PSR, the defendant's objections will be denied, except as to acceptance of responsibility.

It is so **ORDERED**.

ENTER: July 8, 2008

/s/ JAMES P. JONES
Chief United States District Judge